IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EDDIE and SHARON LESTER**, *et al.* | : | CIVIL ACTION NO. 3:01-CV-1182 |
| | : | |
| Plaintiffs | : | (Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| **GENE PERCUDANI**, *et al.* | : | |
| | : | |
| Defendants | : | |

-----------------------------------------------------------------------------

| | | |
|---|---|---|
| **PABLO ACRE**, *et al.*, | : | CIVIL ACTION NO. 1:04-CV-0832 |
| | : | |
| Plaintiffs | : | (Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| **CHASE MANHATTAN** | : | |
| **MORTGAGE CORP.**, *et al.* | : | |
| | : | |
| Defendants | : | |

## **MEMORANDUM**

Presently before the court are cross-motions (Case No. 3:01-CV-1182, Docs. 515, 517; Case No. 1:04-CV-0832, Docs. 383, 385) to enforce a settlement agreement entered into between plaintiffs and the Percudani defendants, Gene Percudani, Chapel Creek Homes, Inc., Raintree Homes, Inc., Homes by Vintage, Inc., Y-Rent, Inc., and Chapel Creek Mortgage Banker, Inc. (hereinafter "defendants"). Plaintiffs move this court to order defendants to provide full and final payment of $300,000, in compliance with the terms of the settlement agreement. (See Case No. 3:01-CV-1182, Docs. 515, 516; Case No. 1:04-CV-0832, Docs. 383, 384). Defendants move the court to: 1) deny plaintiffs' motion to enforce settlement agreement; and 2) enforce

the terms of the settlement agreement as written, wherein payment of the $300,000 settlement fund shall be remitted to plaintiffs' counsel to cover attorney's fees and costs, that no part of the settlement fund shall be paid to plaintiffs, and that such fund shall not be provided until plaintiffs' counsel obtains full and complete approval of plaintiffs and a general release of claims from all plaintiffs. (See Case No. 3:01-CV-1182, Docs. 517, 520; Case No. 1:04-CV-0832, Docs. 385, 388). For the reasons that follow, the court will grant plaintiffs' motion to enforce settlement agreement and deny defendants' cross-motion to enforce settlement agreement.

I. **Background and Procedural History**

Lead plaintiffs Eddie and Sharon Lester, on behalf of a plaintiff class, commenced a class action against real estate developer Gene Percudani and multiple defendants on June 28, 2001. (See Case No. 3:01-CV-1182, Doc. 1). After dismissal of the class action, on April 16, 2004, plaintiffs Pablo and Ivette Acre along with over 150 pursued a civil action against the defendants and Chase Manhattan Mortgage Corporation, William K. Spaner, and Dominick P. Stranieri. (Case No. 1:04-CV-0832, Doc. 1). On November 3, 2008, the court directed that the disputes be resolved through mediation. (See Case No. 3:01-CV-1182, Doc. 455; Case No. 1:04-CV-0832, Doc. 312). Concluding in February 2009, the mediation resulted in an oral settlement agreement between the parties, in which defendants agreed to pay plaintiffs a sum of $300,000 in return for a release of all claims by plaintiffs against defendants. On February 20, 2009, the court issued an order (Case No. 3:01-CV-1182, Doc. 474; Case No. 1:04-CV-0832, Doc. 331) staying the case and closing it for

2

statistical purposes only in light of the agreement. After the February 20, 2009 Order, plaintiffs' counsel began obtaining written releases from plaintiffs regarding the settlement of claims against defendants. During this time, the parties exchanged drafts of a written settlement agreement. After considerable delay, plaintiffs provided a final draft of the settlement agreement to defendants' counsel on June 5, 2010. Unsuccessful in securing an executed written settlement agreement from defendants' counsel, plaintiffs filed a motion (Case No. 3:01-CV-1182, Doc. 506; Case No. 1:04-CV-0832, Doc. 374) to enforce settlement on August 6, 2010. Plaintiffs withdrew this motion when defendants executed the written settlement agreement on September 3, 2010. (Case No. 3:01-CV-1182, Doc. 511; Case No. 1:04-CV-0832, Doc. 380)

The written settlement agreement provides for a general release of all claims by plaintiffs against defendants, as provided in the first paragraph:

> The parties jointly prepare this written settlement agreement stating the settlement terms in full ("Settlement Agreement"). This Settlement Agreement is executed by the Raintree Defendants counsel and by counsel for Plaintiffs. This Settlement agreement shall also include that plaintiffs' counsel provide an executed release, approved by these parties, to be signed by each Plaintiff, or in the case of plaintiff's [sic] who filed bankruptcy, an order approving settlement signed by the bankruptcy court judge, where applicable. Each release will provide a general release of claims against the Raintree Defendants and incorporate by reference the terms of this settlement agreement.

(Case No. 3:01-CV-1182, Doc. 515, Ex. C; Case No. 1:04-CV-0832, Doc. 383, Ex. C).

The second paragraph of the settlement states the terms of payment, as conditioned upon the release of claims by plaintiffs against defendants:

3

> Raintree Defendants shall pay $300,000.00 to plaintiffs' counsel at the same time that said releases or bankruptcy orders are provided to Gene Percudani, which represents payment of attorneys fees and costs towards plaintiffs' counsels' fees and costs associated with the prosecution of cases of <u>Lester, et al. V. Percudani, et al.</u>, case no. 3:01-CV-1182 and <u>Acre, et al. v. Chase, et al.</u>, case no. 1:04-CV-0832 and <u>Crespo: James v. Chase, et al.</u>, case no. 2008-0752.

(<u>Id.</u>)

Plaintiffs contend that they have provided all required releases and bankruptcy orders to defendants, in accordance with the terms of the settlement agreement. (<u>See</u> Case No. 3:01-CV-1182, Doc. 515, Ex. D; Doc. 516, at 2; Case No. 1:04-CV-0832, Doc. 383 Ex. D; Doc. 384, at 2). Claiming full compliance with the terms of the agreement in obtaining all releases and bankruptcy orders, plaintiffs allege that defendants have refused to tender the $300,000 in settlement funds to plaintiffs' counsel in bad faith and thus in violation of the terms of the settlement agreement. (<u>Id.</u>) In response, defendants argue that they are not obligated to provide the settlement funds until defense counsel is provided with copies of releases which have been approved by defendants, indicating that no part of the settlement funds will be remitted to plaintiffs. (Case No. 3:01-CV-1182, Doc. 517 ¶ 26; Case No. 1:04-CV-0832, Doc. 385 ¶ 26).

On June 9, 2011, plaintiffs filed a motion (Case No. 3:01-CV-1182, Doc. 515; Case No. 1:04-CV-0832, Doc. 383) to enforce settlement agreement. Defendants filed a cross-motion (Case No. 3:01-CV-1182, Doc. 517; Case No. 1:04-CV-0832, Doc. 385) to enforce settlement agreement on June 10, 2011, in opposition to plaintiff's motion. The motions have been fully briefed and are now ripe for disposition.

4

## II.     Standard of Review[1]

Settlement agreements are governed by the ordinary principles of contract law. In re Cendant Corp. Prides Litig., 233 F.3d 188, 193 (3d Cir. 2000). In Pennsylvania, the formation of a settlement agreement, as with any contract, requires that "the minds of the parties should meet upon all terms, as well as the subject matter, of the [agreement]." Mazzella v. Koken, 739 A.2d 531, 536 (Pa. 1999). "An agreement to settle a lawsuit, voluntarily entered into, is binding upon the parties, whether or not made in the presence of the court, and even in the absence of a writing." Green v. John H. Lewis & Co., 436 F.2d 389, 390 (3d Cir. 1970).

The parties are bound by the obligations of a valid settlement agreement duly entered into by counsel with the authority of their clients. Pugh v. Super Fresh Food Markets, Inc., 640 F. Supp. 1306, 1307 (E.D. Pa. 1993). If the parties agree on the essential terms of an agreement and intend them to be binding, "a contract is formed even though they intend to adopt a formal document with additional terms at a later date." Capek v. Mendelson, 821 F. Supp. 351, 357 (E.D. Pa. 1993). The parties must mutually assent to the terms and conditions of the settlement agreement to create a valid agreement. Pugh, 640 F. Supp. at 1308 (citing Main

---

[1] A district court retains jurisdiction to enforce a settlement agreement entered into by the parties in a case pending before it. See McCune v. First Judicial Dist. of Pa. Probation Dept., 99 F. Supp. 2d 565, 566 (E.D. Pa. 2000); Ballato v. General Electric, 147 F.R.D. 95, 97 (E.D. Pa. 1993). Jurisdiction is grounded in public policy favoring the amicable resolution of disputes and the avoidance of costly and time-consuming litigation before the court. D.R. by M.R. v. East Brunswick Bd. of Educ., 109 F.3d 896, 901 (3d Cir. 1997).

Line Theatres, Inc. v. Paramount Film Distrib. Corp., 298 F.2d 801, 803 (3d Cir. 1962)).

Motions to enforce settlement agreements are treated like summary judgment motions, and thus the moving party must show that it is entitled to relief. See Leonard v. Univ. of Delaware, 204 F. Supp.2d 784, 786 (D. Del. 2002) (citing Tiernan v. Devoe, 923 F.2d 1024, 1031-32 (3d Cir. 1991)).

**III.   Discussion**

The gravamen of the parties dispute relates to the terms of payment. Defendants argue that the settlement agreement expressly provides for payment of $300,000 to plaintiffs' counsel only and that no part of the settlement payment may inure to plaintiffs themselves. (Case No. 3:01-CV-1182, Doc. 517 ¶¶ 8-10; Case No. 1:04-CV-0832, Doc. 385 ¶¶ 8-10). Plaintiffs assert that there was never any agreement to restrict all settlement funds to plaintiffs' counsel, and the written agreement does not inhibit the payment of settlement monies to plaintiffs. (Case No. 3:01-CV-1182, Doc. 519 ¶ 8; Case No. 1:04-CV-1182, Doc. 387 ¶ 8). In light of counsels' fee agreements, plaintiffs argue that restricting payment of settlement funds to plaintiffs' counsel would violate Pennsylvania Rule of Professional Conduct 1.5. (Case No. 3:01-CV-1182, Doc. 515 ¶ 10; Case No. 1:04-CV-0832, Doc. 383 ¶ 10).

The dispute over the interpretation of the settlement agreement arises from language in the general release of claims form that plaintiffs' counsel provided to plaintiffs. Defendants allege that the parties' counsel agreed to a form release of

claims[2] but that plaintiffs' counsel distributed to their clients release forms containing additional language to which defendants' counsel did not agree. (Case No. 1:04-CV-1182, Doc. 517 ¶ 11-13; Case No. 3:01-CV-0832, Doc. 385 ¶ 11-13). The additional language states the following: "In return for this release I will be provided a pro rata share of the $300,000.00 settlement. My attorneys' fees and other case costs will be deducted out of that pro rata share of the $300,000 settlement." (Id., Ex. C). Defendants claim that the additional language in the release form contradicts the written settlement agreement to which both parties assented. (Id. at ¶ 14).

---

[2] The releases provided to plaintiffs state the following:

> The Plaintiff[s] hereby expressly and irrevocably remise, release, acquit, waive, forever discharge and agree to refrain from pursuing in any way the Percudani Defendants, from all claims, suits, causes of action, liabilities, damages, defenses, debts, sums of money, accounts, bonds, bills, specialties, covenants, controversies, agreements, promises, variances, trespasses, judgments, executions and demands whatsoever, in law or equity ("Claims"), that I, plaintiff, have ever had, now have or may have in the future, known or unknown, against the Percudani Defendants arising out of or related to all Claims asserted or that could have been asserted in the lawsuits entitled Lester, et al. v. Perducani, et al., Case No. 3:01-cv-1182, or Acre, et al. v. Chase, et al., Case No. 1:04-cv-832, both filed in the Federal District Court for the Middle District of Pennsylvania.
>
> I acknowledge that I have read and understand the Settlement Agreement that was entered into between Percudani Defendants and Plaintiffs, through their counsel, and agree that the terms of the Settlement Agreement, to which I agree, are incorporated by reference into this release.

(Case No. 3:01-CV-1182, Doc. 517, Ex. B; Case No. 1:04-CV-0832, Doc. 385, Ex. B).

## A. The Settlement Agreement

On February 10, 2009, the parties reached an oral settlement agreement, the essential terms of which were that defendants would pay plaintiffs' counsel a sum of $300,000, once plaintiffs provided copies of all releases or bankruptcy court orders approving settlement and release of claims. The parties reduced their oral settlement to a writing signed by both parties on September 3, 2010.

Pursuant to principles of contract law, the court looks to the writing itself to ascertain the parties' intent. Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 613 (3d Cir. 1995); Samuel Rappaport Family P'ship v. Meridian Bank, 657 A.2d 17, 21 (Pa. Super. Ct. 1995) ('It is firmly settled that the intent of the parties to a written contract is contained in the writing itself.' (quoting Krizovensky v. Krizovensky, 624 A.2d 638, 642 (Pa. Super. Ct. 1993))). When the writing is clear on its face, the court will not consider extrinsic or parole evidence regarding the parties' intent, such as, in this case, what occurred during settlement discussions or prior drafts of the ultimate written agreement. See Mellon Bank, N.A. v. Aetna Business Credit, Inc., 619 F.2d 1001, 1010 & n.9 (3d Cir. 1980). "Only where the writing is ambiguous may the factfinder examine all the relevant extrinsic evidence to determine the parties' mutual intent." Duquesne Light Co., 66 F.3d at 613 (citing Allegheny Int'l, Inc. V. Allegheny Ludlum Steel Corp., 40 F.3d 1416, 1424 (3d Cir. 1994)).

Accordingly, the court must first determine wether the settlement agreement is clear or ambiguous. The pertinent language of the settlement agreement in

dispute, is as follows: "Raintree Defendants shall pay $300,000.00 to plaintiffs' counsel at the same time that said releases or bankruptcy orders are provided to Gene Percudani, which represents payment of attorneys fees and costs towards plaintiffs' counsels' fees and costs associated with the prosecution of cases . . . ." (Case No. 3:01-CV-1182, Doc. 515, Ex. C; Case No. 1:04-CV-0832, Doc. 383, Ex. C). Importantly, the settlement agreement provides that "[t]he parties jointly prepare this written settlement agreement stating the settlement terms in full." (Id.) Thus, no assertion can be made that the parties intended the written settlement agreement to represent only part of the settlement entered into, with other provisions to be reduced to writing at a later date.

The court finds the disputed language to be clear on its face. The language does not exclude or in any way prohibit payment of some amount of the settlement monies to plaintiffs. The written settlement agreement language clearly provides that no additional monies above the $300,000 will be provided for attorney's fees and costs, but the settlement agreement language in no way limits whether or how plaintiffs' counsel distributes those funds. The court finds that defendants are bound by the settlement agreement according to the terms reduced to writing and that the terms do not prevent distribution of settlement funds to plaintiffs.

**B.    The Release of Claims**

Defendants dispute the form release drafted by plaintiffs' counsel and signed by plaintiffs. Where the scope of a release is disputed, courts have held that release clauses are not necessarily essential terms of settlement agreements. See Mastroni-

Muckler v. Allstate Ins. Co., 976 A.2d 510, 522 (Pa. Super. Ct. 2009) (citing Nicholas v. Wyndham Int'l, Inc., No. 2001-147, 2007 WL 4811566, at *4 (D.V.I. Nov. 20, 2007)). Courts routinely enforce settlement agreements even where the precise wording of a release has not been finalized. Id.; see also Allapattah Servs. v. Exxon Corp., Nos. 90-0986 and 05-21338, 2007 U.S. Dist. LEXIS 71379, at *18 (S.D. Fla. Sept. 26, 2007) ("The release is not an essential term of the agreement as it merely reflects the binding and conclusive effect of the agreement in the claims process."); Thomas v. Delta Family-Care Disability & Survivorship Plan, No. 05-74900-DT, 2007 WL 1806201, at *1 (E.D. Mich. June 21, 2007) ("The only 'essential term' in the present case was the amount defendant was to pay, as the release is a standard term of all settlement agreements . . . .") (applying Michigan law).

In the instant matter, the September 3, 2010, settlement agreement stated that plaintiffs' counsel would provide an "executed release," approved by both parties, to be signed by each plaintiff. Plaintiffs's counsel avers that he provided drafts of the release language to defendants, to which defendants' counsel failed to respond until they received the releases and bankruptcy orders. (See Case No. 3:01-CV-1182, Doc. 519 ¶ 11; Case No. 1:04-CV-0832, Doc. 387 ¶ 11).

The releases signed by plaintiffs include all of the release language the defendants requested. (See Case No. 3:01-CV-1182, Doc. 515, Ex. D; 517, Ex. B; Case No. 1:04-CV-0832, Doc. 383, Ex. D; Doc. 385, Ex. B). The additional language added by plaintiffs' counsel—two sentences regarding the distribution of settlement funds—in no way limits or alters the scope of the general release signed by each

10

plaintiff or obtained through bankruptcy orders. Moreover, as explained above, the language does not violate the express written payment terms of the settlement agreement assented to by the parties.

The disagreement over approved release drafts will not render the settlement agreement unenforceable. The court will not permit the defendants to avoid compliance with the settlement agreement on the basis of the two additional sentences in the executed releases that neither violate the payment term of the express written agreement, nor alter the scope of the general release provided. Therefore, the court finds that plaintiffs have complied with the terms of the settlement agreement.

### C.     Miscellaneous Issues

Defendants assert that plaintiffs violated the express terms of the settlement agreement when plaintiffs' counsel asked the individual parties to sign releases during the time when negotiations of the settlement agreement were ongoing. (See Case No. 3:01-CV-1182, Doc. 520, at 7-8; Case No. 1:04-CV-0832, Doc. 388, at 7-8). This argument is unavailing. Plaintiffs' counsel initiated the process of obtaining signed releases from plaintiffs *after* the oral settlement agreement had been reached on February 10, 2009. (See Case No. 3:01-CV-1182, Doc. 520, Exs. A-C; Case No. 1:04-CV-0832, Doc. 388, Exs. A-C) (noting date each plaintiff signed the written release). It is of no moment that a written agreement was not yet executed. Green, 436 F.2d at 390 (agreement to settle is binding even in absence of a writing); see also Capek, 821 F. Supp. at 357

Next, defendants aver that plaintiffs' counsel lacked the proper written authority from plaintiffs to negotiate settlement. (Case No. 3:01-CV-1182, Doc. 520, at 14; Case No. 1:04-CV-0832, Doc. 388, at 14). In Pennsylvania, an attorney must have express authority from a client to settle a case. Archbishop v. Karlak, 450 Pa. 535, 540 (1973). "The necessity of special authority . . . not only denies the existence of implied authority, but also of apparent authority of an attorney to bind his client to such obligations by virtue of his office." Id. at 540-41 (quoting Starling, Exr. v. West Erie Ave. Bldg. & Loan Ass'n, 333 Pa. 124, 127 (1939)).

The basis for defendants' assertion that plaintiffs' counsel lacked authority from his clients to enter the settlement agreement is defendants' argument that no portion of the settlement funds would be distributed to plaintiffs, which would conflict with the written fee agreement between plaintiffs and plaintiffs' counsel. (Case No. 3:01-CV-1182, Doc. 520, at 14-15; Case No. 1:04-CV-0832, Doc. 388, at 14-15). The court has rejected defendants' contention that the written settlement agreement prohibits plaintiffs from receiving any of the settlement monies. Thus, the argument fails. There is no evidence that plaintiffs' counsel lacked authority to enter the settlement. To the contrary, the signed releases indicate that all plaintiffs were aware of the settlement offer and gave counsel the appropriate authority to enter into such agreement.

Defendants also assert that plaintiffs' counsel has yet to provide releases or bankruptcy court orders for all plaintiffs, and therefore the terms of the settlement agreement have not been satisfied for the transfer of the $300,000 to plaintiffs'

counsel.  (Case No. 3:01-CV-1182, Doc. 518 ¶ 5, Ex. A; Doc. 520, at 8, Ex. 8; Case No. 1:04-CV-0832, Doc. 386 ¶ 5, Ex. A; 388, at 8, Ex. E).  A comparison of defendants list of missing bankruptcy orders with the releases and bankruptcy orders provided to the court by plaintiffs establishes that all releases are present.  (Case No. 3:01-CV-1182, Doc. 515, Ex. D; Doc. 518, Ex. A; Doc. 520, at 8, Ex. 8; Case No. 1:04-CV-0832, Doc. 383, Ex. D; Doc. 386, Ex. A; 388, at 8, Ex. E).  The allegedly missing releases have been provided to defendants.  (Case No. 3:01-CV-1182, Doc. 518 ¶ 5; Doc. 522 ¶ 4; Case No. 1:04-CV-0832, Doc. 386 ¶ 5; Doc. 390 ¶ 4).  Plaintiffs have complied with the terms of the settlement agreement and defendants must do the same.[3]

### D.     Attorney's Fees

Finally, plaintiffs move the court to award plaintiffs attorneys' fees and costs incurred from their motion to enforce settlement due to defendants' alleged bad faith attempt to avoid settlement payment obligations.  (Case No. 3:01-CV-1182,

---

[3] Unrelated to the motions to enforce settlement agreement, on February 25, 2010, and March 2, 2010 plaintiffs filed a total of five concurred-in motions to dismiss certain deceased plaintiffs (see Case No. 1:04-CV-0832, Docs. 340, 341, 342, 343 and 351), which the court granted (see Case No. 1:04-CV-0832, Docs. 345, 346, 347, 348, and 352).  Now, in defendants' motion to enforce settlement, defendants' counsel claims that he "has absolutely no knowledge that he ever concurred" in those motions and sent letters to plaintiffs' counsel regarding the issue.  (Case No. 3:01-CV-1182, Doc. 517 ¶¶ 15-17; Case No. 1:04-CV-0832, Doc. 385 ¶¶ 15-17).  The letters defendants' counsel sent are dated March 31, 2011, and April 18, 2011, over one year after the motions were filed and granted.  (Case No. 3:01-CV-1182, Doc. 517, Exs. F, F-1; Case No. 1:04-CV-0832, Doc. 385 Exs. F, F-1).  Defense counsel cannot be heard to complain more than one year after said motions were filed that he simply cannot recall whether he concurred in the motions.  The dismissal *with prejudice* of those plaintiffs through the five motions filed in February and March of 2010, has no bearing whatsoever on the settlement agreement.

13

Doc. 516, at 7; Case No. 1:04-CV-0832, Doc. 384, at 7). In response, defendants request attorney's fees and costs for their motion, asserting instead that plaintiffs acted in bad faith based on their alleged violations of the settlement agreement and willful delay of the pending matter. (Case No. 3:01-CV-1182, Doc. 520, at 16; Case No. 1:04-CV-0832, Doc. 388, at 16).

Generally, attorneys' fees and costs are not recoverable, and unless specifically permitted by statute are awarded only in extraordinary cases. Hobbs v. American Investors Mgmt., Inc., 576 F.2d 29, 35 n.18 (3d Cir. 1978). However, a court has the power to assess attorneys' fees when the losing party has acted "in bad faith, vexatiously, wantonly, or for oppressive reasons." Id.

Plaintiffs have not met their burden of showing bad faith because they have only shown delay on the part of defendants. Mere delay is insufficient to show bad faith. See Walther & Cie v. U.S. Fidelity & Guar. Co., 397 F. Supp. 937, 946 (M.D. Pa. 1975). Defendants' failure to turn over settlement funds in a timely manner, causing plaintiff to seek enforcement of the settlement, does not amount to bad faith. Similarly, defendants' contention that plaintiffs never intended to use the approved releases is without merit and therefore does not constitute bad faith. Accordingly, an award of attorneys' fees and costs to either party would be inappropriate in this situation.

**III.    Conclusion**

The court finds that plaintiffs are entitled to full and final payment of $300,000 by defendants as provided in the written settlement agreement between the parties.  The court will therefore grant plaintiffs' motion (Case No. 3:01-CV-1182, Doc. 515; Case No. 1:04-CV-0832, Doc. 383) to enforce settlement agreement and deny defendants' cross-motion (Case No. 3:01-CV-1182, Doc. 517; Case No. 1:04-CV-0832, Doc. 385) to enforce settlement agreement.


       S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge


Dated:        December 8, 2011

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PABLO** and **IVETTE ACRE**, *et al.* | : | **CIVIL ACTION NO. 1:04-CV-0832** |
| Plaintiffs | : | (Judge Conner) |
| v. | : | |
| **CHASE MANHATTAN MORTGAGE CORP.**, *et al.* | : | |
| Defendants | : | |

-----------------------------------------------------------------------------

| | | |
|---|---|---|
| **EDDIE** and **SHARON LESTER**, *et al.*, | : | **CIVIL ACTION NO. 3:01-CV-1182** |
| Plaintiffs | : | (Judge Conner) |
| v. | : | |
| **GENE PERCUDANI**, *et al.* | : | |
| Defendants | : | |

## **ORDER**

AND NOW, this 8th day of December, 2011, upon consideration of the motion (Case No. 3:01-CV-1182, Doc. 515; Case No. 1:04-CV-0832, Doc. 383) to enforce settlement agreement, filed by plaintiffs, and the cross-motion (Case No. 3:01-CV-1182, Doc. 517; Case No. 1:04-Cv-0832, Doc. 385) to enforce settlement agreement, filed by Gene Percudani and the Raintree defendants, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. Plaintiffs' motion (Case No. 3:01-CV-1182, Doc. 515; Case No. 1:04-CV-0832, Doc. 383) to enforce settlement agreement is GRANTED.

2. Defendants' cross-motion (Case No. 3:01-CV-1182, Doc. 517; Case No. 1:04-CV-0832, Doc. 385) to enforce settlement agreement is DENIED.

3.  Within fourteen (14) days of the date of this order defendants shall tender $300,000.00 to plaintiffs' counsel in accordance with the terms of the parties' settlement agreement.

4.  Within fourteen (14) days of the date of this order plaintiffs shall file a letter with the court informing the court whether there are any outstanding matters, or whether the above-captioned matter may be closed.

                                                    S/ Christopher C. Conner
                                                    CHRISTOPHER C. CONNER
                                                    United States District Judge